UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERNICE ALSTON,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JACOB J. LEW, SECRETARY OF THE UNITED STATES DEPARTMENT OF TREASURY,**<br><br>    Defendant. | Civil Action No. 12-1038 (JEB) |

**MEMORANDUM OPINION**

In 2011, Plaintiff Bernice Alston sought the U.S. Department of Treasury's review of the denial of retirement benefits she believed she had earned while employed by the District of Columbia Public Schools from 1970 to 1976. Specifically, she challenged a determination by the District of Columbia Retirement Board – an independent agency responsible for managing the assets of District retirement funds – that because she had applied for and received a refund of $2,458.96 after leaving DCPS, she was ineligible for further benefits. Treasury denied her appeal, finding that the records upon which the Board had based its determination were reliable. Dissatisfied with Treasury's decision, Alston filed this suit, and both parties have now cross-moved for summary judgment. Because Treasury's denial of Alston's appeal was not arbitrary or capricious, the Court will grant Defendant's Motion and deny Plaintiff's.

**I.    Background**

Employees of DCPS can participate in the District of Columbia Teachers' Retirement Plan, overseen by the Federal Government and the District of Columbia. See Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251. The U.S. Department of Treasury is responsible

for funding Plan benefits based on service performed on or before June 30, 1997, see D.C. Code § 1-701, *et seq.*, while the District Government administers the Plan through the District of Columbia Retirement Board. See BBA § 11041; D.C. Code § 1-809.01. If a Plan participant has been denied benefits, she may request reconsideration from the DCRB. See 31 C.F.R. § 29.404(b)-(d). Additionally, if the benefits were earned prior to 1997, an individual whose claim has been denied by the DCRB may appeal that decision to the Department of Treasury. Id. § 29.405. Treasury's decision represents a final agency action, and a party may seek judicial review of that decision by filing suit in this District. See BBA §§ 11022, 11071-11072; D.C. Code § 1-805.02.

Moving to the particulars of Alston's case, the Court notes that, unless otherwise specified, the facts set forth herein are undisputed and are drawn from the parties' Statements of Material Facts submitted pursuant to Local Civil Rule 7(h). From July 1, 1970, until her resignation in January 12, 1976, Plaintiff was an employee of DCPS. See Defendant's Statement of Material Facts (SMF), ¶¶ 1-2. On March 22, 1978, she was re-hired by DCPS, and she continued to work there until November 17, 1996, when she resigned pursuant to a reduction in force. See id., ¶ 6. During both periods of employment, Alston made contributions to the Plan. See Pl.'s SMF, ¶ 2. Subsequent to her employment at DCPS, Alston was hired by the National Aeronautics and Space Administration, where she worked until she retired on September 2, 2010. See Def.'s SMF, ¶ 7.

Upon her retirement, Alston discovered that her benefits package did not include contributions she had made to the Plan from 1970 through 1976. See Pl.'s SMF, ¶ 6. When she sought to remedy this, she was informed by the DCRB that those benefits had been excluded because she had received a refund of $2,548.96 in Plan contributions on March 24, 1976, after

2

she left DCPS. See id., ¶ 7. Plaintiff denied ever applying for or receiving this refund. See id., ¶ 8.

Because more than thirty years had passed since the refund was issued, only two records documenting the refund could be located. The first, the Individual Retirement Record (Form FA-103) notes that Alston applied for a refund that was "paid on voucher 110212 dtd 3/24/76." Administrative Record (A.R.) 0013. The second, Alston's Separation Retain Record (Form DA-33) documents a $2,548.96 credit, stating, "Appl for refund paid on voucher 110212 dtd 3/24/76"). See A.R. 0014. Both forms were maintained in the ordinary course of business pursuant to the District's processing of employee retirement-contribution refunds. See A.R. 0003-0004. Neither form was signed or provided any other information regarding the refund beyond the voucher number and date. See A.R. 0013-0014. The District, moreover, was unable to locate any further documentation, such as the voucher itself or the canceled check. See A.R. 0004. According to the District, this was because the documents date from "over thirty years ago[, and they] would have been destroyed as the District requirements for payroll and financial records that pertain to disbursement only require a retention period of 4 to 7 years." See Def.'s SMF, ¶ 5 (citing A.R. 0015). It further explained that the two records it had located, Forms DA-33 and FA-103, are "hard cards that are easier to maintain than paper files and thus have been retained." See id.

On June 2, 2011, the Board responded to Alston's inquiry requesting an "investigation" into the voucher and refund. See id., ¶¶ 8-9. It explained that it had conducted a search of its records and that no additional documentation surrounding the voucher or the refund existed; it nonetheless concluded, however, that her contributions had been refunded based on the available documentation and the practices of the agency at the time. See id., ¶ 9. Alston appealed that

decision by a letter dated June 6, 2011, to Treasury's Office of D.C. Pensions. See id., ¶ 10. On February 1, 2012, Treasury denied that appeal. See A.R. 0002-0016 (Treasury Decision). Having conducted "a comprehensive review of the facts and the statutory language of the Plan," Treasury concluded: "According to Plan records, your employee contributions to the Plan of $2,548.96 during this period were already refunded to you on March 24, 1976, and you have failed to provide a sufficient basis on which to overcome the presumption of regularity accorded to the District's actions and recordkeeping." A.R. 0002. The letter set forth the undisputed facts that were relevant to her appeal, the procedural history surrounding the Board's decision, and an explanation of Treasury's decision to deny Alston's appeal. See A.R. 0002-0005. The letter further noted that the decision was a final agency action and that Alston had the right to seek judicial review of that decision. See A.R. 0004.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.

In a case involving review of a final agency action under the APA, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)

(citing Nat'l Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)).  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Id. (internal citations omitted).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

       The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  This is a "narrow" standard of review as courts defer to the agency's expertise.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Id. (internal quotation omitted).  The reviewing court "is not to substitute its judgment for that of the agency."  Id.  Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

**III.     Analysis**

The sole question that Alston raises here is whether Treasury's denial of her appeal was arbitrary and capricious. See Pl.'s Reply at 1-4. While acknowledging the deferential standard for this Court's review, Plaintiff nonetheless disputes the sufficiency of the record Treasury relied on in determining that the retirement contributions had been refunded to her. See id. at 1-2. Finding that Defendant examined the relevant facts and articulated a rational connection between those facts and its conclusion in its February 1, 2012, decision, the Court must side with Treasury here.

In its four-page Decision Letter, Treasury began its analysis by setting forth the undisputed facts surrounding Alston's refund claim and its procedural history, then reviewed the Board's June 2, 2011, decision. See A.R. 0002-0003. In so doing, Treasury "reviewed the correspondence between [Alston] and DCRB, [the Office of D.C. Pensions], and [the District's Office of Pay and Retirement Services]; relevant documents that are contained in [Alston's] file; and the applicable statutory provisions and Plan documents." It ultimately concluded that Alston had

> failed to demonstrate that you were not issued a refund of employee contributions to the Plan during the period of 1970-1976. The Plan records, used in the ordinary course of business, reflect that a refund of contributions in the amount of $2,548.96 was issued to you on March 24, 1976. Specifically, DCRB has produced your Form FA 103, dated 3/24/76 (Exhibit 4), the document used in the ordinary course of business in processing a District employee's refund of retirement contributions, that was utilized by the benefit administrator at the time, the District's Office of Budget and Financial Management. Form DA-33, also dated 3/24/76, further reflects your application for and payment for a refund of this amount. (Exhibit 5).

A.R. 0003-04.

Treasury, moreover, expressly addressed the specific challenges that Alston re-asserts here:

> On appeal, you assert that DCRB's decision is based on insufficient records – namely, you state that the 3/24/76 voucher reflecting a refund of contributions "is absent any type of signature or initials for approval, validation or certification." The absence of initials or a signature on the Form DA 33 is an insufficient basis on which to grant your appeal. As the Federal Circuit noted in Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001), public officials are entitled to a "presumption of regularity" in the performance of their official duties, and in the absence of clear evidence to the contrary, the doctrine presumes that these duties have been properly discharged. At your request, the District and DCRB conducted an exhaustive search of their records and determined that no additional records exist that relate to your refund beyond those discussed above. As OPRS noted in its November 10, 2011 letter to you, these records would have been over 30 years old, and have been destroyed in accordance with the mandatory retention period applicable at that time. (Exhibit 6). Because the existing records of the District and DCRB, maintained in the ordinary course of business, reflect that a refund of contributions was in fact issued to you, the burden shifts to you to provide evidence that you did not receive a refund in this amount. The absence of a signature on the forms is not sufficient to overcome the presumption of regularity accorded to the government's actions.
>
> You further question the validity of the refund forms discussed above on the basis that your service computation has historically included the years of service from 1970-76. However, the computation of service has no relationship to the issuance of a refund of contributions. In either case, your employment by DCPS from 1970-76 would have been included in a computation of your service time.

A.R. 0004.

While Alston continues to disagree with Treasury's conclusion, she cannot show that its decision was arbitrary or capricious. In its review, Treasury relied on the facts in the record – both the facts specific to Alston's refund and to the agency's practices and procedures for processing such refunds – and "articulate[d] a satisfactory explanation for its action including a

rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (internal quotation omitted).  This Court, in fact, would come to the same conclusion even if conducting *de novo* review.  Strong support for the Treasury's decision lies in the two documents that the Board was able to locate.  These two hard cards contain very specific information – namely, particular voucher numbers and actual dates on which they were issued.  The information on the two cards, moreover, was consistent.  Based on the practices of the District in processing requests for refunds at the time, Treasury sensibly determined that the refund had been issued.

In so concluding, Treasury found that the government was entitled to a "presumption of regularity" in the performance of its official duties and that the "absence of a signature on the forms is not sufficient to overcome the presumption of regularity accorded to the government's actions." A.R. 0004 (citing Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001)).  In describing this presumption, the D.C. Circuit has held that "[w]hile not irrebuttable, this presumption may only be rebutted through clear or specific evidence.  'The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" Riggs Nat'l Corp. & Subsidiaries v. Comm'r, 295 F.3d 16, 21 (D.C. Cir. 2002) (quoting United States v. Chem. Found., 272 U.S. 1, 14-15 (1926)).  The Circuit in Riggs ruled against the party who sought to rebut the presumption by arguing that "inconsistencies in documents . . . call[ed] into question the accuracy" of the challenged documents, finding that the inconsistencies were not "clear evidence of anything." Id. (internal quotations omitted).

The "evidence" here is even less persuasive.  Alston has offered nothing to call into question Treasury's reliance on the presumption of regularity; instead, she merely contends that

because other employees have raised similar concerns, the Court should find that there are sufficient "administrative problems" to rebut the presumption that the District complied with its own procedures in processing refunds.  See Pl.'s Reply at 4.  Such speculation, however, is not sufficient evidence to rebut the presumption.  It was reasonable, moreover, for Treasury to conclude that the absence of additional records did not create sufficient doubt about the refund, as the particular records were more than thirty years old and would not have been retained pursuant to the agency's document-retention policies.

Because Treasury's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," this Court cannot disturb it.  5 U.S.C. § 706(2)(A).

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's.  A separate Order consistent with this Opinion will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 19, 2013